# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**ALISHA DANIELLE DUNN**                                                      **PLAINTIFF**

**V.**                    **CASE NO. 4:20-CV-01248-LPR-ERE**

**COMMISSIONER of**
**SOCIAL SECURITY ADMINISTRATION**                               **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to United States District Judge Lee P. Rudofsky. Either party may file written objections to this Recommendation. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Rudofsky can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I. INTRODUCTION

On May 4, 2018, Alisha Dunn applied for disability benefits, alleging disability beginning June 16, 2014. (Tr. at 15). Her claims were denied both initially and upon reconsideration. *Id*. After conducting a hearing on September 19, 2019, an Administrative Law Judge (ALJ) denied Ms. Dunn's application on January 9, 2020.

1

(Tr. at 26). Because an unfavorable ALJ decision from a prior application was issued on November 7, 2016, the ALJ's order addressed the unadjudicated period from November 8, 2016 to the date of decision. (Tr. at 15). Following the ALJ's order, Ms. Dunn sought review from the Appeals Council, which denied her request for review. (Tr. at 1). Ms. Dunn seeks judicial review of the ALJ's decision, which now stands as the Commissioner's final decision.

For the reasons stated below, the Court should affirm the decision of the Commissioner.

## II. THE COMMISSIONER'S DECISION

The ALJ found that Ms. Dunn had not engaged in substantial gainful activity since the alleged adjusted onset date of November 8, 2016. (Tr. at 18). At Step Two, the ALJ found that Ms. Dunn had the following severe impairments: obesity, degenerative disc disease, pseudotumor cerebri, intracranial hypertension, seizure disorder, migraine headaches, anxiety, and depression. *Id*.

After finding Ms. Dunn's impairments did not meet or equal a listed impairment (Tr. at 18), the ALJ determined that she had the residual functional capacity ("RFC") to perform work at the sedentary exertional level, except that she could: (1) occasionally climb ramps and stairs; (2) occasionally balance, stoop, kneel, crouch, and crawl; (3) occasionally reach overhead; (4) occasionally be exposed to very loud noise, very bright light, and vibration; (5) never climb ladders,

ropes, or scaffolds; (6) never be exposed to unprotected heights or dangerous moving machinery, and could never operate a motor vehicle at work; (7) understand and remember simple instructions; (8) sustain attention and concentration to complete simple tasks with regular breaks every two hours; (9) interact as needed with supervisors and coworkers and have routine, superficial interaction with the public; and (10) adapt to routine work conditions and occasional work place changes. (Tr. at 20-21).

Relying on the testimony of a Vocational Expert ("VE"), the ALJ found that Ms. Dunn was unable to perform her past relevant work as a medical assistant or office manager, but that Ms. Dunn's RFC would allow her to perform jobs that exist in significant numbers in the national economy, including document preparer, table worker, and cutter/paster. (Tr. at 25-26). The ALJ concluded that Ms. Dunn was not disabled. (Tr. at 26).

## III.  DISCUSSION

### A.  Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence]

adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

      **B.**     **Ms. Dunn's Arguments on Appeal**

Ms. Dunn contends that the ALJ's decision is not supported by substantial evidence. She argues that the ALJ erred at Step Three in finding that her combination of impairments did not meet or medically equal the severity of Listing 11.02, which governs epilepsy. She also argues that the ALJ did not properly consider the functional limitations that she alleged resulted from her seizures and migraines in determining her RFC. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Ms. Dunn first argues that her impairments meet or equal the requirements outlined in Listing 11.02. See 20 C.F.R. Pt. 404, subpt. P, app. 1 § 11.02.[1] Social

---

[1] 11.02 *Epilepsy*, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:

    A.  Generalized tonic-clonic seizures, occurring at least once a month for at least 3 consecutive months despite adherence to prescribed treatment; or

Security listings "define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Thus, if a claimant can show her impairments meet or equal a listing, she is presumed unable to work. *Id.* It is Ms. Dunn's burden to make this showing. *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010). To show an impairment *matches* a particular listing, it must meet all of the specified medical criteria. *Marciniak v. Shalala*, 49 F.3d 1350, 1353 (8th Cir 1995). To demonstrate "medical equivalency" to a listing, a claimant must present medical findings which are equal in severity to all of the criteria for the most similar listed impairment. *Id.*

Listing 11.02 provides for listing-level severity based on the type of seizures a claimant is experiencing and the frequency with which they occur. Where seizures

---

B. Dyscognitive seizures, occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment; or

C. Generalized tonic-clonic seizures, occurring at least once every 2 months for at least 4 consecutive months despite adherence to prescribed treatment; and a marked limitation in one of the following:
  1. Physical functioning; or
  2. Understanding, remembering, or applying information; or
  3. Interacting with others; or
  4. Concentrating, persisting, or maintaining pace; or
  5. Adapting or managing oneself; or

D. Dyscognitive seizures, occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment; and a marked limitation in one [of the categories in C.1-C.5 above].

20 C.F.R. pt. 404, subpt. P, app. 1 § 11.02 (citations omitted).

occur less frequently, the claimant must demonstrate a marked limitation in one of the following categories: physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. 20 C.F.R. pt. 404, subpt. P, app. 1 § 11.02. Ms. Dunn has failed to demonstrate that her seizure disorder alone meets all of the criteria of this listing.

Evidence in the record shows Ms. Dunn had a generalized tonic-clonic seizure[2] in August of 2016. (Tr. at 339, 413). She reported another seizure in August of 2018 but told the ALJ she had not had another since then. (Tr. at 86, 535, 566). Ms. Dunn has not shown that she suffers from generalized tonic-clonic seizures frequently enough to meet Listing 11.02.

Listing 11.02 also sets forth criteria for dyscognitive seizures, which are described as manifestations of abnormal electrical activity in the brain, characterized by an alteration of consciousness without convulsions or loss of muscle control, and during which blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur. 20 C.F.R. pt. 404, subpt. P, app. 1 § 11.00H1b. Ms.

---

[2] Generalized tonic-clonic seizures are characterized by loss of consciousness accompanied by a tonic phase (sudden muscle tensing causing the person to lose postural control) followed by a clonic phase (rapid cycles of muscle contraction and relaxation, also called convulsions). Tongue biting, incontinence, and falls resulting in injury may occur. 20 C.F.R. pt. 404, subpt. P, app. 1 § 11.00H1a.

Dunn told the ALJ that she suffers from frequent "silent seizures" that may fit these criteria. However, Ms. Dunn has failed to demonstrate that they occur with the requisite frequency to meet the listing.

In December 2017, Ms. Dunn reported that she had been seizure-free since September of 2016 and that she was able to drive.[3] (Tr. at 389). Six months later, on June 4, 2018, she reported that she was having six seizures per month, with symptoms including an altered level of consciousness, aura, staring and unresponsiveness. (Tr. at 384). The record does not indicate when these seizures may have begun, and her neurologist noted that she was driving at that time. *Id*. Clinical notes from September 2018 state that she was having "occ[asional] seizures, although they are less frequent over the past year." (Tr. at 537). In March of 2019, she reported having only one seizure per month. (Tr. at 647). At the hearing before the ALJ in September 2019, Ms. Dunn testified that she had not driven since 2015. (Tr. at 69, 90). She stated that she was having "silent seizures at least once, once or twice a month, maybe once a week." (Tr. at 75). A few minutes later, she told the ALJ she was having at least one or two silent seizures per week. (Tr. at 87). These inconsistencies diminish her credibility and support the ALJ's conclusion that her seizure activity does not meet or medically equal the requirements of Listing 11.02.

---

[3] Multiple clinical notes indicate that Ms. Dunn's doctors informed her of an Arkansas law requiring her to be seizure-free for at least one year before driving or operating machinery. (Tr. at 47, 387, 396, 400).

Alternatively, Ms. Dunn argues that the combination of her seizure activity and her migraine headaches medically equal Listing 11.02B. Although the ALJ did not specifically address Ms. Dunn's migraine headaches under this listing, reversal is not required if the record evidence supports the ALJ's overall conclusion. *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006).

Ms. Dunn testified that she suffers from migraines and pressure headaches caused by spinal fluid buildup around her brain secondary to intracranial hypertension. (Tr. at 73, 80). She alleged she suffered three or four headaches every week, and that her headaches "can last all day and multiple days." (Tr. at 80). Although the record contains ample testimonial evidence that Ms. Dunn suffers from headaches, the medical evidence does not establish that they occur with the requisite frequency and severity to meet Listing 11.02B. Multiple clinical notes in the record indicate that symptoms associated with her intracranial hypertension were stable or improving with weight loss. (Tr. at 455, 461, 467, 485). Ms. Dunn reported that her migraine headaches improved with prescription medication, and in May 2017, she told her neurologist, Robert Silzer, MD, that her headaches had "resolved" on propranolol. (Tr. at 393). On September 25, 2017, she reported having "occasional" headaches and clinical notes stated that she was "doing well with her headaches and shunt." (Tr. at 509-510). In December of 2017, she reported having only one migraine per month at a level 4 severity, and that prescription drugs provided relief.

8

(Tr. at 389). On June 4, 2018, she informed Dr. Silzer that she was having about 2-6 migraines a month, but that prescription medication relieved most of her headaches. (Tr. at 384). On September 24, 2018, Dr. Silzer noted that her headaches were "under good control" and stable with medication. (Tr. at 535). In his medical opinion letter dated August 2019, Dr. Silzer wrote that she had "occasional severe migraine headaches." (Tr. at 652). Although her primary care provider did opine that she could experience headaches and dizziness if she remained upright too long, he failed to cite to any objective evidence in the record from the relevant period to support his statements. (Tr. at 623). Ms. Dunn has failed to prove that her headaches equaled the severity or frequency criteria of Listing 11.02B. Furthermore, "[a]n impairment which can be controlled by treatment or medication is not considered disabling." *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

Although the evidence could possibly support finding that the combination of Ms. Dunn's headaches and seizure episodes medically equaled the requirements of Listing 11.02B at some point during the relevant period, it is not this Court's job to reweigh the evidence. *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003). Instead, the Court must determine whether substantial evidence in the record supports the ALJ's conclusions. *Id*. Substantial evidence in this case amply supports a finding that Ms. Dunn's combination of impairments does not medically equal Listing 11.02B.

As for her RFC, Ms. Dunn faults the ALJ's assessment of her complaints and contends that the RFC fails to account for her probable absenteeism and her need to frequently lie down during the workday. Ms. Dunn bears the burden of proving her RFC, which represents the most she can do despite the combined effects of her credible limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). "It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations." *Id*. A claimant's credibility is primarily for the ALJ, not the courts, to decide. *Id*. at 1218.

Ms. Dunn argues the ALJ did not consider limitations from her migraines and seizures, but the ALJ specifically included limitations in her RFC regarding exposure to loud noises, bright lights, and vibration; working at unprotected heights or around dangerous machinery; and driving a motor vehicle for work. (Tr. at 23). Ms. Dunn has failed to establish that she possesses functional restrictions beyond those found in the RFC. The medical record demonstrates conservative treatment with good results from medication, and Ms. Dunn's limitations do not appear to have greatly interfered with her "robust" documented activities of daily living, which included caring for her two children as well as a pet, shopping for groceries, preparing frozen meals, performing household chores including laundry and cleaning, and remaining "very active" in her church. (Tr. at 20). Neurological

findings and MRI results were generally unremarkable, with only mild abnormalities. (Tr. at 23, 540). Symptoms from her pseudotumor cerebri had been gradually improving since onset. (Tr. at 22, 509). The medical evidence does not substantially support Ms. Dunn's claims that she would have to lie down or miss work frequently. See *Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) (ALJ did not err in failing to include nonexertional limitations in RFC that were not substantially supported by the record). The ALJ properly considered Ms. Dunn's testimony, medical records, and observations of her treating physicians and others in determining her RFC.

The Court finds that no error occurred here. Substantial evidence supports the ALJ's conclusion that Ms. Dunn's impairments did not meet or equal a listing, and the ALJ did not err in assessing Ms. Dunn's RFC.

## IV.  CONCLUSION

Substantial evidence supports the Commissioner's decision that Ms. Dunn was not disabled. The Court should affirm the Commissioner's decision and enter judgment in favor of the Defendant.

IT IS SO ORDERED this 10th day of January, 2022.

_____
UNITED STATES MAGISTRATE JUDGE